**IN THE UNITED STATES DISTRICT COURT**
**FOR SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SARA A. PUSKARICH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:23-cv-3880-DWD |
| ) | |
| EQUIAN, LLC, as subrogee of ) | |
| Metropolitan Life Insurance Company, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Before the Court is Plaintiff's Motion to Remand. (Doc. 13). Defendant filed a Response in Opposition, and Plaintiff filed a Reply in Support, of the Motion to Remand. (Docs. 20 & 23). For the reasons explained below, the Motion to Remand is **GRANTED**.

**I. BACKGROUND**

On December 8, 2022, Plaintiff filed a 2-Count Complaint in the Circuit Court of St. Clair County, Illinois. (Doc. 1-1). By way of background, Plaintiff alleged that she suffered "a traumatic brain injury and other injuries on August 7, 2016," while working as a conductor for BNSF Railroad Company. (Doc. 1-1, pg. 3). As a result of those injuries, Plaintiff alleged she has been unable to work since that date. (Doc. 1-1, pg. 3).

Thereafter, Plaintiff applied for long-term disability benefits under a disability policy issued by Metropolitan Life Insurance Company ("MetLife"). (Doc. 1-1, pg. 4). Plaintiff's application for long-term disability benefits was approved; accordingly, she began receiving monthly benefits from MetLife. (Doc. 1-1, pg. 4).

1

On July 18, 2019, Plaintiff initiated a lawsuit against BNSF Railroad Company under the Federal Employers Liability Act, 45 U.S.C. § 51 *et seq*. ("FELA"), in relation to the accident that occurred on August 7, 2016. (Doc. 1-1, pg. 4). Ultimately, a jury in that FELA action returned a verdict for Plaintiff. (Doc. 1-1, pg. 4). She was awarded damages totaling $640,000 ($490,000 for past and future economic damages, and $150,000 in past and future noneconomic damages). (Doc. 1-1, pg. 4). Plaintiff alleges the jury did not specify the amount, if any, awarded for lost income. (Doc. 1-1, pg. 4). Plaintiff initially filed a notice of appeal related to the judgment in the FELA action; however, the parties allegedly agreed to a settlement for personal injury damages but not for lost income. (Doc. 1-1, pg. 5). Upon receiving the settlement proceeds, Plaintiff's attorney deposited a sum of money, totaling 134,684.40, into a trust account pending the resolution of the competing claims to that sum in this case. (Doc. 1-1, pg. 5).

In Count I of the Complaint, Plaintiff seeks declaratory relief under 735 ILCS 5/2-701 as to the competing claims for the $134,684.40. (Doc. 1-1, pgs. 5-6). Defendant claims a right to $134,684.40, as a subrogee of MetLife, because of the long-term disability benefits paid by MetLife under the disability policy issued to Plaintiff. (Doc. 1-1, pg. 6). In pertinent part, the disability policy provides:

> If You become disabled and You receive Disability benefits under this certificate and You receive payment from a third party for loss of income with respect to the same loss of income for which you received benefits under this certificate (for example, a judgement, settlement, payment from Federal Social Security or payment pursuant to Workers' Compensation laws), you shall reimburse Us from the proceeds of such payment up to an amount equal to the benefits paid to You under this certificate for such Disability. Our right to receive reimbursement from any such proceeds shall be a claim or lien against such proceeds and our right shall provide Us

> with a first priority claim or lien over any such proceeds up to the full amount of the benefits paid to You under this certificate for such Disability. You agree to take all action necessary to enable Us to exercise Our rights under this provision, including, without limitation:
>
> - notifying Us as soon as possible of any payment You received or are entitled to receive from a third party for loss of income with respect to the same loss of income for which You received benefits under this certificate;
>
> - furnishing of documents and other information as requested by Us or any person working on Our behalf;
>
> - holding in escrow, or causing Your legal representative to hold in escrow, any proceeds paid to You or any party by a third party for loss of income with respect to the same loss of income for which You received benefits under this certificate, up to an amount equal to the benefits paid to You under this certificate for such Disability, to be paid immediately to Us upon Your receipt of said proceeds.

(Doc. 1-1, pgs. 6-7, 64) (Emphasis in original omitted.).

As relief in Count I, Plaintiff seeks a declaration that the above provision of the disability policy does not apply to the settlement agreement or proceeds and, by extension, Defendant is not entitled to any portion of the settlement proceeds or the $134,684.40 sum. (Doc. 1-1, pgs. 7-10). If the Court finds the above provision of the disability policy applies to the settlement agreement, then Plaintiff seeks a declaration that the disability policy provision is ambiguous and unenforceable, such that Defendant is not entitled to any portion of the settlement proceeds or the $134,684.40 sum. (Doc. 1-1, pgs. 8-10). Finally, if the Court finds the above provision of the disability policy is not ambiguous and does apply to the settlement agreement, Plaintiff seeks a declaration that

the disability policy provision does not apply to any portion of the settlement proceeds or the $134,684.40 sum and Defendant must pay her fees and costs. (Doc. 1-1, pgs. 8-10).

In Count II, which is primarily at issue, Plaintiff alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Doc. 1-1, pgs. 10-13). Defendant allegedly contacted Plaintiff and her attorneys to collect the $134,684.40 sum, prompting her to seek the "basis, legal or otherwise, and documents supporting its attempt to collect the debt." (Doc. 1-1, pg. 11). Defendant allegedly "repeatedly failed and/or refused" to provide the basis and supporting documents. (Doc. 1-1, pg. 11). Defendant allegedly violated the FDCPA by: engaging in harassing, oppressive, or abusive behavior toward Plaintiff; making false representations and using deceptive practices in relation to the debt; using unfair and unconscionable means of attempting to collect the debt; failing to provide notice of Plaintiff's rights; failing and intentionally refusing to validate the debt; failing and refusing to cease the collection of the disputed debt; and threatening unlawful action or action intended to violate the FDCPA. (Doc. 1-1, pg. 12). As relief for injuries to her feelings, personal humiliation, embarrassment, mental anguish, and emotional distress, Plaintiff sought actual and statutory damages, attorney fees and costs, and prejudgment interest. (Doc. 1-1, pgs. 12-13).

Plaintiff voluntarily dismissed Count II, effective July 14, 2023, which was around 7 months after the filing of her Complaint. (Docs. 1, pg. 3; 1-1, pgs. 2, 117, 121). On December 8, 2023, which was 1 year from the date that Plaintiff filed her Complaint and approximately 5 months from the date Plaintiff's voluntary dismissal of Count II became effective, Defendant removed the case to this Court based upon the parties' diversity of

citizenship. (Doc. 1). In the Notice of Removal, Defendant addressed, *inter alia*, the timeliness of the removal. (Doc. 1, pgs. 7-9). Specifically, Defendant noted Plaintiff's Complaint did not allege her citizenship, which it did not learn until November 30, 2023, when Plaintiff tendered her First Supplemental Answers and Objections to Defendant's First Set of Interrogatories. (Docs. 1, pg. 3; 1-4). Defendant argued the removal was timely because Plaintiff's First Supplemental Answers and Objections to Defendant's First Set of Interrogatories qualified as "other paper" under 28 U.S.C. § 1446(b)(3), which provides:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

(Doc. 1, pg. 7).

In addition, Defendant argued the case was not removable when Plaintiff filed her Complaint because the "now-dismissed FDCPA claim," which was alleged in Count II, "did not support Article III standing." (Doc. 1, pg. 8). In particular, Defendant argues Plaintiff failed to allege a concrete injury for purposes of Article III standing by merely requesting actual damages, statutory damages, attorney fees and costs, and prejudgment interest for the alleged injuries to her feelings, personal humiliation, embarrassment, mental anguish, and emotional distress. (Docs. 1, pg. 8; 1-1, pgs. 12-13). Therefore, Defendant argues the case was timely removed within 30 days of Plaintiff's First Supplemental Answers and Objections to Defendant's First Set of Interrogatories and within one year of the commencement of this action in state court. (Doc. 1, pg. 9).

## II. ANALYSIS

Plaintiff has now filed a Motion to Remand, arguing Defendant's untimeliness resulted in a waiver of the right to removal. (Doc. 13, pgs. 1, 12-13). As support, Plaintiff argues the Complaint implicated the Court's federal question jurisdiction because Count II alleged a monetary injury resulting from conduct that was violative of the FDCPA. (Doc. 13, pg. 2). Plaintiff concedes that a technical or procedural violation of the FDCPA does not, by itself, cause an injury in fact for purposes of Article III standing. (Doc. 13, pgs. 8-9). However, Plaintiff argues Defendant ignores the totality of the allegations in the Complaint, namely, that Defendant's conduct in seeking to enforce and collect on its claims violated various provisions of the FDCPA, caused Plaintiff to deposit the disputed 134,684.40 sum into her attorney's trust account, and rendered those funds unavailable for Plaintiff's immediate use during this litigation. (Doc. 13, pg. 10). Plaintiff stresses that it is the inability to use those monies, which were acquired after years of litigation, that caused a concrete injury to her feelings, personal humiliation, embarrassment, mental anguish, and emotional distress. (Doc. 13, pg. 10). For these reasons, Plaintiff argues Defendant failed to timely remove the case. (Doc. 13, pg. 2). As such, Plaintiff seeks a remand of the case to the Circuit Court of St. Clair County together with an award of attorney fees and costs for the preparation of her Motion to Remand. (Doc. 13, pg. 2).

In its Response, Defendant argues, as it did in the Notice of Removal, Count II did not allege a concrete injury for purposes of Article III standing. (Doc. 20, pg. 1). Count II instead "alleged statutory damages and attorneys' fees arising from an alleged violation of the FDCPA and injury to Plaintiff's 'feelings, personal humiliation, embarrassment,

6

mental anguish and emotional distress.' " (Doc. 20, pgs. 1, 5). According to Defendant, the Seventh Circuit has unequivocally held that such injuries do not invoke Article III standing in the context of the FDCPA. (Doc. 1, pg. 1). Further, Defendant states the arguments in Plaintiff's Motion to Remand deviate from the allegations in her Complaint. (Doc. 1, pgs. 1, 8-9, 11). That is, Plaintiff now argues, without alleging in the Complaint, the communications giving rise to Count II caused her to place the disputed settlement proceeds in her attorney's trust account. (Doc. 20, pg. 2). According to Defendant, Plaintiff does not allege any injury-causing actions that were taken in response to those communications, such as paying the debt or suffering a decreased credit score. (Doc. 20, pgs. 3, 10-11). Even if true, though, Defendant argues Plaintiff cannot connect her injuries to a violation of the FDCPA, as the above-quoted disability policy provision required her to set the third-party settlement proceeds aside in this manner. (Doc. 20, pgs. 2-3, 8-9, 11). And, in any event, that action "is not a harm envisioned by the FDCPA." (Doc. 20, pg. 10). Therefore, Defendant argues winning or losing on Count II would not change Plaintiff's position. (Doc. 20, pg. 2). Finally, Defendant argues there is no basis for requiring it to pay Plaintiff's attorney fees under 28 U.S.C. § 1447(c) since there were, at least, reasonable grounds to believe the removal was appropriate. (Doc. 20, pgs. 11-12).

In a Reply, Plaintiff argues Defendant ignores the federal pleading standards and the cases finding a loss of use of monies may establish an injury in fact for purposes of Article III standing. (Doc. 23, pgs. 1-2). Plaintiff suggests she could identify the relief sought without providing detail about the nature of her injury. (Doc. 23, pg. 2). Further, Plaintiff stresses that Defendant allegedly refused to provide a basis for its claim to the

7

134,684.40 sum, other than the language of the disability policy provision, even though Plaintiff alleged she has not received lost income. (Doc. 23, pgs. 3-4). Defendant also allegedly used false representations of its legal status to collect the proceeds, resulting in mental anguish and emotional distress. (Doc. 23, pg. 4). This allegedly prompted Plaintiff to deposit the disputed settlement proceeds into her attorney's trust account and to file this litigation, causing injury, namely, a loss of use of the 134,684.40 sum. (Doc. 20, pg. 4).

Now, generally, a notice of removal in a civil action shall be filed:

> [W]ithin 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).

The "removal clock" does not begin to tick until the defendant receives a pleading or other paper that "affirmatively and unambiguously reveals" a removal is proper. *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013). However, a case cannot be removed, based on the diversity of citizenship, more than 1 year after the commencement of the civil action. 28 U.S.C. § 1446(c). Furthermore, the failure to remove a case before the time on the "removal clock" expires results in a waiver of the defendant's right to proceed in federal court. *See Buller Trucking Co. v. Owner Operator Indep. Driver Risk Retention Group, Inc.*, 461 F. Supp. 768, 780 (S.D. Ill. 2006) (collecting cases); *Phoenix Container, L.P. ex rel. Samarah v. Sokoloff*, 83 F. Supp. 2d 928, 933 (N.D. Ill. 2000).

The party invoking federal jurisdiction, namely, Defendant, has the burden of proving its elements, including Article III standing, at the time of removal. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992); *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352-53 (7th Cir. 2017)); *accord Pierre v. Midland Credit Mgmt, Inc.*, 29 F.4th 934, 939 (7th Cir. 2022). Moreover, courts should narrowly interpret the removal statute, presuming the plaintiff may choose the forum and resolving all doubts as to the propriety of the removal in favor of a remand. *See Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)); *Disher v. Citigroup Global Markets, Inc.*, 487 F. Supp. 2d 1009, 1014-15 (S.D. Ill. 2007) (quoting *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007); *Ford v. Keck*, No. 6-cv-667, 2007 WL 1022003, *1 (S.D. Ill. April 2, 2007); citing *Alsup v. 3-Dauy Blinds, Inc.*, 435 F. Supp. 2d 838, 841 (S.D. Ill. 2006); *Littleton v. Shelter Ins. Co.*, No. 99-cv-912, 2000 WL 356408, *1 (S.D. Ill. Mar. 9, 2000)).

To establish standing under Article III, a plaintiff must demonstrate an injury in fact that is traceable to the defendant's conduct and is redressable by the Court. *Casillas v. Madison Ave. Assoc.*, 926 F.3d 329, 333 (7th Cir. 2019) (citing *Lujan*, 504 U.S. at 560-61); *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 845 (N.D. Ill. 2020). An injury in fact, which is primarily at issue in this case and has been "described as the '[f]irst and foremost' element of [the] standing" requirement, "is 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.' " *Casillas*, 926 F.3d at 333 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Lujan*, 504 U.S. at 560); *accord Crabtree v. Experian Info. Sols., Inc.*, 948

9

F.3d 872, 877 (7th Cir. 2020). To be concrete, the injury in fact must actually exist or the plaintiff must face a substantial risk of injury. *Kylie S.*, 475 F. Supp. 3d at 845 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1019-20 (7th Cir. 2016)). The harm from the injury in fact need not be tangible to be concrete; however, the harm must be real and not abstract. *Casillas*, 926 F.3d at 333 (quoting *Spokeo*, 578 U.S. at 339); *see also Sexton v. Target Corp. Servs., Inc.*, No. 21-cv-1492, 2022 WL 2817124, *2 (E.D. Wisc. July 19, 2022) ("Concrete injuries include both 'traditional tangible harms, such as physical harms and monetary harms,' and intangible harms, including 'reputational harms, disclosure of private information, and intrusion upon seclusion.' "); *Patterson v. Howe*, 96 F.4th 992, 996 (7th Cir. 2024) ("Intangible harms arising from statutory violations can satisfy the injury-in-fact requirement so long as they are sufficiently concrete."). To be actual or imminent, "a threatened injury must be 'certainly impending' " as opposed to "merely 'possible.' " *Bost v. Illinois State Bd of Elections*, 684 F.Supp.3d 720, 733 (N.D. Ill. 2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Finally, to be particularized, an injury in fact must affect the plaintiff personally and individually. *Kylie S.*, 475 F. Supp. 3d at 845 (citing *Spokeo*, 578 U.S. at 340).

Specific to this case, a violation of the FDCPA, by itself, does not cause an injury in fact. *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 781 (7th Cir. 2021); *accord Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021). Rather, a statutory violation of the FDCPA "must have 'harmed or presented an "appreciable risk of harm" to the underlying concrete interest that Congress sought to protect.' " *Markakos*, 997 F.3d at 781-82 (quoting *Casillas*, 926 F.3d at 333); *accord Pennell*, 990 F.3d at 1045; *see also* 15 U.S.C.

10

§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."). Put another way, "courts may entertain FDCPA claims only when the plaintiff suffers a concrete harm that he wouldn't have incurred had the debt collector complied with the Act." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 669 (7th Cir. 2021) (citing *Casillas*, 926 F.3d at 334). This is true whether it was a procedural or substantive FDCPA violation. *Markakos*, 997 F.3d at 780 (citing *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020)); *accord Smith v. GC Serv. Ltd P'ship*, 986 F.3d 708, 710 (7th Cir. 2021).

By way of example, a plaintiff may show the FDCPA violation caused a change in behavior that resulted in a concrete harm. *Patterson*, 96 F.4th at 998 (quoting *Markakos*, 997 F.3d at 780; *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020)). The plaintiff may show, among other things, the FDCPA violation caused him or her to pay what was not owed, to pay a debt with a lower interest rate instead of a debt with a higher interest rate, or to receive a lower credit rating. *See id.* (quoting *Brunett*, 982 F.3d at 1068); *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 639 (7th Cir. 2023); *Pierre*, 29 F.4th at 939; *Wadsworth*, 12 F.4th at 668; *Markakos*, 997 F.3d at 780. It is not enough, however, for the plaintiff to allege only "informational injuries" or "emotional harms," *e.g.*, personal humiliation, embarrassment, mental anguish, emotional distress, worry, intimidation, anxiety, stress, annoyance, anger, or confusion, without further detriment. *See Markakos*, 997 F.3d at 780-82; *Wadsworth*, 12 F.4th at 668 (citing *Pennell*, 990 F.3d at 1045; *Gunn v.*

11

*Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020); *Brunett*, 982 F.3d at 1068-69); *Smith*, 986 F.3d at 710. In short, "[t]hese are quintessential abstract harms that are beyond…[the] power to remedy." *Wadsworth*, 12 F.4th at 668. Similarly, not all actions taken or not taken due to "emotional harms," such as calling a debt collector to dispute a debt or hiring an attorney for guidance and to file a lawsuit, cause injuries in fact. *See Patterson*, 96 F.4th at 998 (citing *Brunett*, 982 F.3d at 1069; *Nettles v. Midland Funding, LLC*, 983 F.3d 896, 900 (7th Cir. 2020); *Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636, 640-41 (7th Cir. 2023) (Hamilton, J., dissenting)); *Pucillo*, 66 F.4th at 638-39; *Pierre*, 29 F.4th at 939.

Here, as an initial matter, Defendant makes the argument that the case was not removable based upon the parties' diversity of citizenship until November 30, 2023, when Plaintiff submitted her First Supplemental Answers and Objections to Defendant's First Set of Interrogatories. *See* 28 U.S.C. § 1446(b)(3). However, as discussed below, the Court agrees with Plaintiff that the case was nevertheless removable based upon federal question and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367(a).

Indeed, when viewing the Complaint as a whole, the Court cannot escape the conclusion that Plaintiff alleged an injury in fact for purposes of her Article III standing to assert FDCPA violations in Count II. The Court agrees with Plaintiff that Defendant, when arguing to the contrary, tends to view her allegations too narrowly in light of the federal pleading standards. *See* Fed. R. Civ. P. 8(a)(2), (3); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("Rule 8(a)(3) requires the plaintiff to identify the remedy sought, but it does not require detail about the nature of the plaintiff's injury.").

Specifically, in relation to Count II, Plaintiff alleges Defendant contacted her to collect the $134,684.40 sum, failed or refused to provide the basis and supporting documents for its claim to those proceeds, and committed various violations of the FDCPA. (Doc. 1-1, pgs. 11-12). It is true that Plaintiff alleges Defendant's violations of the FDCPA caused her to suffer injuries in the form of "emotional harms," which, by themselves, do not confer Article III standing. *See Markakos*, 997 F.3d at 780-82; *Wadsworth*, 12 F.4th at 668; *Smith*, 986 F.3d at 710. However, this is not all that was alleged by Plaintiff. Contrary to Defendant's present arguments, Plaintiff also alleged that "[u]pon receipt of the proceeds of the settlement, a sum of $134,684.40 was deposited into the trust account of…her attorneys in the FELA action, *to be held pending resolution of the competing claims against the funds in this lawsuit*." (Docs. 1-1, pg. 5; 20, pgs. 1-2, 8-9, 11) (Emphasis added.). That allegation was incorporated, by reference, into Count II. (Doc. 1-1, pg. 10). And, it was for this comprehensive harm that Plaintiff requested actual damages, statutory damages, attorney fees and costs, *and* prejudgment interest. (Doc. 1-1, pgs. 12-13).

Therefore, the Complaint plausibly alleges that Defendant's wrongful conduct, including the FDCPA violations, caused Plaintiff to deposit the 134,684.40 sum into her attorney's trust account, despite Defendant's alleged failure to support its claim and Plaintiff's belief that the disability policy provision at issue applies to lost income but not to the settlement agreement or proceeds for personal injury damages. *See Patterson*, 96 F.4th at 998; (Doc. 1-1, pgs. 7-8). Put another way, Defendant was on notice that its alleged wrongful conduct prompted Plaintiff to respond in a way that deprived her of the use of the $134,684.40 that was allegedly obtained as compensation unrelated to lost income

13

under the disability policy. *See Patterson*, 96 F.4th at 998. Under circumstances similar to those at issue in this case, courts have found an injury in fact capable of conferring Article III standing. *See, e.g., Dieffenbach*, 887 F.3d at 828 ("The plaintiffs have standing because the data theft may have led them to pay money for credit-monitoring services, because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal, and because the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective. These injuries can justify money damages, just as they support standing."); *Habitat Educ. Center v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (holding the plaintiff had standing to challenge a bond order on appeal from a final judgment where, *inter alia*, it incurred a loss—the loss of the use of $10,000—and "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money."); *Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 590 (7th Cir. 2017) ("Ms. Roppo also alleges that, because of Travelers's misrepresentations, there was a delay in settling her claim. Consequently, she lost the time value of her settlement over the months that Travelers (allegedly) was perpetrating the fraud. [Citation]. Thus, she has alleged an injury to property resulting from the alleged RICO violation."); *Van v. LLR, Inc.*, 962 F.3d 1160, 1162-63 (9th Cir. 2020) ("[W]e hold that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III."); *MSPA Claims 1, LLC v. Tenet Florida, Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) ("For seven months, FHCP was unable to use money that (allegedly) belonged to it. The inability to have and use money to which a party is entitled is a concrete injury. [Citation]. FHCP's harm cannot be remedied by simply receiving the

amount owed—it requires something more to compensate for the lost time, like interest."); *Pontes v. Rowan Univ.*, No. 20-2645, 2021 WL 4145119, *4 n. 5 (3d Cir. Sept. 13, 2021) (recognizing that "several sister circuits have held that [the] temporary loss of use of money is itself a sufficiently concrete injury to establish standing"); *see also In re U.S. Office of Pers. Mgmt Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019) (noting as to damages, not Article III standing, "[t]he delay in those Plaintiffs' receipt of their refunds, and the foregone time value of that money, is an actual, tangible pecuniary injury.").

As a result, the Court finds Plaintiff adequately alleged an injury in fact under the FDCPA, as to implicate the Court's federal question jurisdiction. *See Markakos*, 997 F.3d at 781-82; *Pennell*, 990 F.3d at 1045; *Wadsworth*, 12 F.4th at 669. However, since Defendant did not comply with § 1446(b)(1), the Court must now find it waived the right of removal. *See Buller Trucking Co.*, 461 F. Supp. at 780; *Sokoloff*, 83 F. Supp. 2d at 933. In light of the reasonable grounds for the removal, evident from Defendant's Notice of Removal and the issues discussed herein, the Court will not "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *see also Wolf v. Kennelly*, 574 F.3d 406, 411-12 (7th Cir. 2009) (discussing how a district court may award attorney fees and costs under § 1447(c) only where the removing party lacked an "objectively reasonable" basis for seeking the removal from state court).

### III. CONCLUSION

For the reasons explained above, the Motion to Remand is **GRANTED**. The case is **REMANDED** to the Circuit Court of St. Clair County, Illinois. All deadlines and

hearings are **TERMINATED**. The Clerk of the Court is **DIRECTED** to close the case and to transmit a certified copy of this Memorandum & Order to the Illinois state court.

**SO ORDERED.**

Dated: May 20, 2024.

s/ *David W. Dugan*
―――――――――――――――
DAVID W. DUGAN
United States District Judge